# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DENNIS HARRIS, ) | |
| ) | |
| Plaintiff, ) | 2:08-cv-0667 |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, COMMISSIONER ) | |
| OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER OF COURT

**NORA BARRY FISCHER, District Judge**

## I.  INTRODUCTION

Plaintiff Dennis Harris ("Plaintiff") brings this action pursuant to 42 U.S.C. §405(g), seeking review of the final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act. The parties have filed cross motions for summary judgment pursuant to Federal Rule of Civil Procedure 56, and the record has been developed at the administrative level. For the following reasons, the case is remanded for proceedings not inconsistent with this opinion.

## II.  PROCEDURAL HISTORY

Plaintiff protectively filed his application for DIB on June 1, 2005, alleging disability since July 9, 2004 due to torn quadriceps. (R. 35-9, 47). Plaintiff's claim was disapproved on August 10, 2005. (R. 30-33). He requested a hearing before an Administrative Law Judge ("ALJ") on September 25, 2005. (R. 34). A hearing was held on March 15, 2007. (R. 273-89). Plaintiff, who was represented by counsel, appeared and testified at the hearing. *Id*. Fred Monaco, a vocational

expert, also testified. (R. 283-87). On April 12, 2007, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Act. (R. 15-22). The Appeals Council subsequently denied Plaintiff's request for review, thereby making the ALJ's decision of the Commissioner in this case. (R. 5-7). Plaintiff now seeks review of that decision by this court.

### III.    STANDARD OF REVIEW

This Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a de novo review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 522, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside, even if this court "would have decided the factual inquiry differently."*Haranft v. Apfel,* 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents [her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Sec'y of Health and Human Servs.,*841 F.2d 57, 59 (3d Cir. 1988); 42 U.S.C. §423 (d)(1). A claimant is considered unable to engage in

2

substantial gainful activity "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423 (d)(2)(A).

An ALJ must do more than simply state factual conclusions to support his ultimate findings. *Baerga v. Richardson,* 500 F.2d 309, 312-13 (3d Cir. 1974). The ALJ must make specific findings of fact. *Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir. 1983). Moreover, the ALJ must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its rule making authority under 42 U.S.C. §405(a), has promulgated a five-step sequential evaluation process to determine whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520 (b), 416.920 (b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." [20 C.F.R.] §§ 404.1520(c), 415.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. [20 C.F.R.] §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that

> he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. [20 C.F.R. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-5, 124 S.Ct. 176, 157 L.Ed. 2d 333 (2003)(footnotes omitted.)

If the claimant is determined to be unable to resume previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given plaintiff's mental or physical limitations, age, education, and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Campbell*, 461 U.S. at 461; *Stunkard*, 842 F.2d at 59; *Kangas*, 823 F.2d 775, 777 (3d Cir. 1987); *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986).

## IV.     FACTS

### A.     General Background

Plaintiff was born on January 6, 1960, making him forty-seven years of age at the time of the ALJ's decision. (R. 20, 35). A forty-seven year old is considered a "younger person" under 20 C.F.R. § 404.1563(c). Plaintiff has a ninth grade education and is able to communicate in English. (R. 20, 52). Plaintiff had previously been employed as a cement finisher from 1978 until the onset of the alleged disability. (R. 40). Plaintiff avers July 9, 2004 as the onset of his disability. (R. 35).

### B.     Medical Background

Plaintiff claims to be disabled due to an injury and related mental impairments. On July 9, 2004, Plaintiff dropped some wood while at work, which caused him to lose his balance and fall.

(R. 101). The wood hit plaintiff and he tore both of his quadriceps tendons. (R. 101). On the same day as the incident, plaintiff had x-rays taken of his knees in the emergency room and he was put into the care of Dr. Michael Gaffney. (R. 106-7). Dr. Gaffney performed a bilateral quadriceps tendon repair on July 10, 2004. (R. 104-5). By two months into his treatment, Plaintiff was no longer using a wheelchair and was to begin outpatient physical therapy. (R. 139). By November 11, 2004, Plaintiff was no longer regularly wearing leg braces and Dr. Gaffney suggested that he look into some sort of vocational training as he felt it unlikely Plaintiff would be able to return to his old job. (R. 137). Plaintiff continued to have knee pain through this period, but made slow progress with physical therapy. (R. 135-139). basis. (R. 135).

On January 14, 2005, Dr. Gaffney noted that he would allow Plaintiff to return to work on a sedentary level. Gaffney also ordered an MRI of both of Plaintiff's knees. (R. 135). Upon review, Gaffney stated that he "did not see anything on the MRI that made me want to explore his quadriceps tendons."(R. 134). Gaffney also noted that Plaintiff was having a problem that sounded like depression and referred him to a psychologist at St. Margaret's. *Id*. On February 25, 2005, Dr. Gaffney suggested that Plaintiff try a new physical therapist which would include electrical stimulation in his therapy. (R. 133). On his April 1, 2005 visit with Gaffney, Plaintiff noted he had some improvement and Gaffney noted that he was progressing with his new physical therapist. (R. 132). On April 29, 2005, Gaffney reported that Plaintiff had been discharged from physical therapy and ordered a second MRI. (R. 131). The MRI indicated progressive healing of the quadriceps tendon, no defect, and less edema present. (R. 130). On July 1, 2005, Gaffney reported that plaintiff was near maximum medical improvement, but continued to experience soreness and popping in his knees. (R. 129).

On September 23, 2005, Gaffney reported that Plaintiff was only wearing leg braces intermittently during certain activities, was making steady progress with his knees, and was experiencing fewer episodes of instability in his knees. (R. 268). During the next three visits with Gaffney, Plaintiff was still reporting pain, but Gaffney did not indicate any changes in Plaintiff's condition. (R. 265-7). At his final visit, Plaintiff indicated that he was going to try a further round of physical therapy to strengthen his legs and was taking Voltaren but only intermittently. (R. 264).

Due to his injury, Plaintiff also indicated that he was experiencing depression and he received outpatient psychiatric care at the Western Psychiatric facility. (R. 116). Plaintiff first sought treatment on April 19, 2005. (R. 123-127). During this visit, Plaintiff was diagnosed with an adjustment disorder with depressed mood and it was indicated that he had experienced a single episode of major depression. (R. 126). At his second visit on May 17, 2005, Plaintiff indicated that he was "slightly depressed." (R. 119). At this visit, it was again reported that Plaintiff had an adjustment disorder with depressed mood. (R. 120). It was also reported that Plaintiff had a mood disorder due to a general medical condition with a major depressive-like episode. *Id.*

The state agency medical consultant, Mary Diane Zelenak, completed a physical residual functional capacity assessment on August 8, 2005. (R. 184-190). She determined that Plaintiff could occasionally lift and carry ten pounds and frequently lift and carry less than ten pounds. (R. 185). She also found that he could walk at least two hours in an eight-hour work day and could sit about six hours in an eight-hour work day. *Id.*

### C. Administrative Hearing

At the hearing, Plaintiff appeared with the assistance of counsel, Robert Gillikin, Esq. (R. 275). Plaintiff testified that he completed the ninth grade; did not receive a GED; could not read

most written materials or write, but could read street signs, make change, and sign his name. (R. 276-77). He testified that he had not received any vocational training, but had worked as a cement finisher. (R. 277). He had participated in a three-year apprenticeship program to learn cement finishing. (R. 284). Plaintiff testified that the pain in his knees was causing problems for him with regard to climbing steps, bending, and stooping. (278-9). He also testified that he had problems sleeping and had been taking Trazodone, but was only taking a small amount, occasionally by the time of the hearing. (R. 279-80). He further testified that he had not had psychiatric treatment since May 2005. (R. 281). Plaintiff was taking Voltaren for pain and stated that it would ease the pain, but there would be residual pain. (R. 281). Plaintiff testified that after sitting for a certain period of time, his knees would lock up. *Id.* He also stated that he could stand for about twenty minutes at a time. *Id.* He further testified that he was able to do little chores around the house such as dishes.(R. 282).

Following Plaintiff's testimony, the ALJ heard testimony from a vocational expert, Dr. Fred Monaco. (R. 284). The ALJ asked the vocational expert whether an individual needed to be able to read or write to be a cement finisher. The vocational expert testified that an individual did not need to be able to read or write, and that since the job was skilled there would be no transferable skills to the sedentary level. (R. 284). The ALJ then posed a hypothetical question to the vocational expert and asked what work such a person could perform. (R. 285). The ALJ described a person who could do no more than two hours of standing or walking in an eight-hour day; would require a sit/stand option; could not climb stairs, ropes, ladders, and scaffolds but could occasionally climb ramps; could do no balancing, squatting, crawling, kneeling; could do occasional crouching and stooping; could not operate foot controls with the lower extremities;

could not participate in occupations that required reading beyond the remedial level and that require more than the ability to write more than an individual's name; and could participate in occupations that required the ability to read basic traffic control devices like stop signs. (R. 285).

The vocational expert testified that the hypothetical person could do the job of a bench assembler, a machine feeder or off-bearers, and hand-working occupations. (R. 286). The vocational expert further testified that these jobs exist in significant numbers in the national economy. *Id.* The vocational expert also testified that if the hypothetical individual could not crouch or stoop, his testimony would not change. (R. 286) Finally, the vocational expert testified that his testimony would not change if the hypothetical individual would be limited to simple, routine, repetitive tasks not performed in a fast-paced production environment, involving only simple work-related decisions, and relatively few workplace changes. *Id.*

## V. DISCUSSION

The ALJ concluded that the Plaintiff was not disabled under §§ 216(i), and 223(d) of the Social Security Act. The ALJ reached this decision after applying the five step framework for analysis summarized in *Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003).

### A. The Five Step Analysis

Under the first step, the ALJ determined that Plaintiff had not engaged in substantial gainful activity at any time relevant to his decision. (R. 17). At step two, the ALJ determined that Plaintiff suffered from severe impairments under the standards set forth in 20 C.F.R. §§ 404.1520 (c). *Id.* Specifically, the ALJ determined that Plaintiff suffered from status post bilateral knee tendon ruptures with surgical repair, an adjustment disorder, and depression. *Id.* In the third step,

the ALJ determined that none of Plaintiff's medical impairments met or equaled any impairment listed in 20 C.F.R. Pt. Subpt. P, App. 1 (the "Listing of Impairments"). *Id.* The ALJ also noted that "no physician, psychologist, psychiatrist, or other caregiver in the record has assessed that the claimant's conditions meet or equal the Listings." (R. 18).

Next, the ALJ determined that the Plaintiff's current residual functional capacity did not allow him to return to his past relevant work. (R. 20). Accordingly, at step four the ALJ made the following residual capacity assessment:

> [Plaintiff] has the residual functional capacity to perform sedentary work involving standing and walking for two hours, and sitting for six hours, and allowing the claimant to sit and stand at his discretion, and not involving climbing of stairs, ropes, ladders, and scaffolds; and not involving the operation of foot controls; and involving no more than occasional climbing of ramps; and no more than simple, routine, repetitive tasks, not performed in a fast-paced production environment, involving only simple, work-related decisions, and in general, relatively few workplace changes; and jobs which would not require the ability to read on more than a remedial level, e.g., the ability to read basic traffic control devices; or write more than his name.

(R. 18). The ALJ further found that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that Plaintiff's statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible. (R. 19).

Finally, under step five, the ALJ determined that there were jobs existing in significant numbers in the national economy that Plaintiff could have performed. (R. 21). In making this determination, the ALJ used the assistance of the Medical-Vocational Guidelines (hereinafter, "Grids"), 20 C.F.R. Pt. 404, Subpt. P, App. 2. *Id.* The ALJ explained that if Plaintiff had the capacity to perform the full range of sedentary work a finding of "not disabled" would be directed by Grid Rule 201.19. *Id.* However, the ALJ determined that Plaintiff's ability to do all or

substantially all of the requirements of this level of work was impeded by additional limitations. *Id.* Therefore, the ALJ relied on the testimony of the vocational expert who testified that an individual with Plaintiff's limitations would be able to perform the requirements of the representative occupations of bench assembler, machine feeder/off-bearer, and a hand-worker. *Id.* He further determined that pursuant to SSR 00-4p, the vocational expert's testimony was consistent with the Dictionary of Occupational Titles. *Id.* Accordingly, the ALJ found that a finding of "not disabled" was appropriate under the framework of the rule. *Id.* It is also noted that the ALJ considered Grid Rule 201.17 but found it applicable since the vocational expert testified that the claimant's past work was a skilled position. *Id.* at 21, n.1. The vocational expert testified as such despite the fact that the Plaintiff did not have the ability to read more than remedial traffic control devices or write more than his name. *Id.*

### B. Issue Before This Court

Accordingly, the sole issue before this Court is whether, in step five of the analysis, the ALJ erred in not applying Grid Rule 201.17. (Pl.'s Brief at 6). Plaintiff argues that the ALJ misconstrued the guideline to require that an individual's past relevant work must be unskilled for the guideline to apply. *Id.* The Plaintiff suggests that the guideline may also apply when Plaintiff's past work results in there being no transferability of job skills. *Id.* The Plaintiff further argues that the ALJ failed to recognize 20 C.F.R. §§ 404.1565(a); 416.965(a) and properly apply those regulations and also failed to comply with Social Security Ruling 82-41. *Id.* at 7. Plaintiff suggests that these regulations and the ruling would convert the finding that Plaintiff's work was skilled into a finding that it was unskilled because his skills could not be used to any significant degree in other jobs. To the contrary, the Defendant argues that the ALJ's application of Rule 201.19 was

10

appropriate in this case because the ALJ never actually found that the Plaintiff was illiterate. (Def.'s Brief at 9).

Section 405.1565(a) states in pertinent part:

> If you have acquired skills through your past work, we consider you to have these work skills unless you cannot use them in other skilled or semi-skilled work that you can do now. If you cannot use your skills in other skilled or semi-skilled work, we will consider your work background the same as unskilled.

20 C.F.R. § 404.1565(a). If the ALJ does not properly apply § 404.1565(a) or any of the other pertinent regulations, and if the proper application of that regulation could change the ALJ's determination, the matter should be remanded for further consideration.

### C. ALJ's Application of Grid Rule 201.17

In his decision, the ALJ found that Plaintiff was forty-seven years old at the time of the hearing, had a previous work history of skilled, with no transferable skills, was able to communicate in English, and was now limited to sedentary work. The ALJ found that the Plaintiff was not disabled, reasoning that Grid Rule 201.17 did not apply to Plaintiff as his previous work had been skilled. The ALJ stated that he relied upon the fact that "the vocational expert testified that the claimant's past relevant work as a cement finisher was a skilled position (SVP 7)." Therefore, the ALJ concluded that a finding of "not disabled" was appropriate using a different rule, Grid Rule 201.19.

As the ALJ correctly points out, the Plaintiff does not neatly fall within Grid Rule 201.17, because of his finding that Plaintiff's past work was skilled. The language within Grid Rule 201.17 itself states that a younger individual, who is 45 to 49 years of age, illiterate or unable to communicate in English and whose previous work experience is unskilled or is without prior work

11

experience, should be found disabled. Hence, given the ALJ's finding of skilled past work and taking the language as written in the rule, Grid Rule 201.17 does not apply to the plaintiff. However, when this rule is read in conjunction with other federal regulations, it can signal the opposite result.

No court in the Third Circuit has put forth a published opinion on the question at issue. Plaintiff cites to one unpublished case from the District of Delaware, <u>Mosleh v. Barnhart</u>, 2002 WL 31202674. In *Mosleh*, the case was remanded based upon the question of whether Plaintiff had acquired any transferable skills from his previous job. *Id.* at 9. The district court analyzed Plaintiff's case under Grid Rule 201.17 and determined that the applicable regulation, 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201 .00(h)(1)(ii), states that a finding of disabled is appropriate if the plaintiff is "unskilled or [has] no transferable skills." *Id.*

Other circuits have similarly dealt with Grid Rule 201.17. <u>See</u> *Higgins v. Apfel*, 222 F.3d 504 (8th Cir. 2000); *Silveira v. Apfel*, 204 F.3d 1257, 1260-61 (9th Cir. 2000); *Sorenson v. Bowen*, 888 F.2d 706 (10th Cir. 1989). In pertinent part, C.F.R. 201.00 (h)(1) states that,

> a finding of "disabled" is warranted for individuals age 45-49 who: (i) Are restricted to sedentary work; (ii) Are unskilled or have no transferable skills; (iii) Have no past relevant work or can no longer perform past relevant work; and (iv) Are able to communicate in English, or able to speak and understand English but are unable to read or write in English.

20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201 .00(h)(1)(ii). Section 404.1565 similarly directs a finding of unskilled work history when a claimant for DIB cannot use his or her own acquired skills in other work. These regulations describe precisely the factual scenario in this case. The ALJ found that the Plaintiff had a previous work history of skilled, but that those skills were not transferable to sedentary work. In addition, Social Security Ruling ("SSR") 82-41(2)(a) further supports a

finding of unskilled as it states that, "the same conclusion is directed for individuals with an unskilled work background and for those with a skilled or semiskilled work background whose skills are not transferable." Therefore, in applying the proper regulations, it is clear that the ALJ should have treated Plaintiff's skilled work history as unskilled because he made the specific finding that Plaintiff did not have any transferable skills.

### C. ALJ's Education and Literacy Determination

The Commissioner argues that substantial evidence exists to support the ALJ's determination that Plaintiff has limited education and is able to communicate in English. He also argues that the ALJ's finding did not include a specific finding that Plaintiff was illiterate only that he had "limited or less education". The ALJ mentions the term "illiteracy" several times in his opinion. The ALJ stated,

> I also recognize that the claimant likely has difficulties reading and writing, and therefore he would appear to be functionally *illiterate*. However, he appears capable of making change, handling simple mathematics, signing his name, and reading basic traffic signs. In fact, despite his claims of *illiteracy*, I note that he managed to obtain and hold a valid driver's license. Aside from the claimant's *illiteracy*, there is no indication that he has displayed signs of serious mental retardation which would further impact on his ability to perform work activity. To the contrary, the claimant was able to obtain and successfully perform a skilled position for many years. My assessment of the claimant's residual functional capacity takes into account any shortcomings associated with his *illiteracy*.

(R. 20)(emphasis added).

The ALJ utilized his finding of "limited or less" education and skilled work history to determine Plaintiff's case under Grid Rule 201.19. It has already been determined that the ALJ's finding of "skilled" work history was not proper under the guidelines considering that the Plaintiff had no transferable skills. The Commissioner claims that the ALJ's finding of "limited or less"

13

education is supported by substantial evidence of record and precludes a finding of Plaintiff being illiterate. In determining an individual's education, the following mutually exclusive categories are used: 1) illiteracy, 2) marginal education, 3) limited education, and 4) high school education and above. 20 C.F.R. § 220.129. "Limited Education" is defined as "ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex duties needed in skilled or semi-skilled jobs. Generally, a limited education is a 7th grade through 11th grade level of education." 20 C.F.R. § 220.129 (b)(3). "Illiteracy" is defined as "the inability to read or write. The Board will consider the claimant illiterate if he or she cannot read or write a simple message such as instructions or inventory lists even though the claimant can sign his or her name. Generally, the illiterate claimant has had little or no formal training." 20 C.F.R. § 220.129 (b)(1).

In support of his finding that Plaintiff had "limited or less" education, the ALJ relied on the fact that Plaintiff could handle simple mathematics by making change, could read basic traffic signals, and could sign his name. He also noted that Plaintiff held a valid driver's license and had a ninth grade education. However, the ALJ then noted that plaintiff appeared to be "functionally illiterate" and that his residual functional capacity finding took into account Plaintiff's shortcomings associated with his illiteracy. The Court does not find these findings to be congruent. First, the fact that Plaintiff could sign his name does not affect a finding of illiteracy. Second, based upon the regulations Plaintiff could not be both illiterate and have an education of "limited or less." Therefore, this case will be remanded so that the ALJ may make a determination of the category into which Plaintiff should be placed.

**IV.     Conclusion**

Based on the foregoing, Plaintiff's motion for summary judgment (Doc. No. 9) is granted insofar as the case is remanded for further proceedings consistent with this opinion, and Defendant's motion for summary judgment (Doc. No. 11) is denied.

An appropriate Order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DENNIS HARRIS, ) | |
| ) | |
| Plaintiff, ) | 2:08-cv-0667 |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, COMMISSIONER ) | |
| OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

## ORDER OF COURT

**AND NOW**, this 22nd day of December, 2008, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED**, **ADJUDGED, AND DECREED** that:

1. Defendant's Motion for Summary Judgment (Document No. 11) is **Denied.**

2. Plaintiff's Motion for Summary Judgment (Document No. 9) is **Granted** insofar as the matter is **Remanded** for further proceedings consistent with the opinion attached hereto. Plaintiff's Motion for Summary Judgment is **Denied** in all other respects.

3. The Clerk will docket this case as closed.

BY THE COURT:

s/Nora Barry Fischer
United States District Court Judge

cc: Robert W. Gillikin, II Esquire
    Email: rgillikin@peircelaw.com

    _____Lee Karl, Esquire
    Email: lee.karl@usdoj.gov

    _____